

Leslie A. Cohen, Esq. (SBN: 93698)
          leslie@lesliecohenlaw.com
J'aime Williams Kerper, Esq. (SBN 261148)
          jaime@lesliecohenlaw.com
LESLIE COHEN LAW, PC
1615-A Montana Avenue
Santa Monica, CA 90403
Telephone:  (310) 394-5900
Facsimile:  (310) 394-9280

Attorneys for Debtor-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| *In re*<br><br>KAST MEDIA INC.<br><br>          Debtor and Debtor in Possession | Case No. 1:24-bk-10396-MB<br><br>Chapter 11<br><br>**REPLY IN SUPPORT OF PLAN AND IN RESPONSE TO OBJECTIONS BY ARCADIAN VANGUARD LLC; DECLARATION OF COLIN THOMSON**<br><br>**<u>Plan Confirmation Hearing</u>:**<br>Date: October 22, 2024<br>Time: 1:30 p.m.<br>Via Zoomgov<br><br>Video/audio web address:<br>https://cacb.zoomgov.com/j/1614174604<br>ZoomGov meeting number: 161 417 4604<br>Password: 392703 Telephone conference lines: 1 (669) 254 5252 or 1 (646) 828 7666 |

## **Table of Contents**

I.    INTRODUCTION ........................................................................................................ 4

II.    BACKGROUND ......................................................................................................... 2

A.    PREPETITION HISTORY ............................................................................................. 2
B.    BANKRUPTCY CASE ................................................................................................. 3
C.    TAX CLAIMS ........................................................................................................... 3
D.    DELAWARE STATUS ................................................................................................ 4
E.    OTHER CLAIM OBJECTIONS..................................................................................... 4

III.    DISCUSSION ........................................................................................................... 5

A.    COMPETENCY OF MR. THOMSON .............................................................................. 5
B.    THE DEBTOR IS ELIGIBLE FOR CHAPTER 11 ............................................................. 6
C.    THE PLAN SATISFIES THE REQUIREMENTS OF 1129(A) AND 1191 ................................ 7
1.    11 U.S.C. § 1123(A)(1) ........................................................................................ 7
2.    11 U.S.C. § 1123(A)(3) ........................................................................................ 7
3.    11 U.S.C. § 1123(A)(5) ........................................................................................ 8
4.    11 U.S.C. § 1123(A)(6) ........................................................................................ 8
5.    11 U.S.C. § 1123(A)(7) ........................................................................................ 9
6.    11 U.S.C. § 1123(B)(2) ........................................................................................ 9
7.    11 U.S.C. § 1129(A)(2) ...................................................................................... 10
8.    11 U.S.C. § 1129(A)(3) ...................................................................................... 10
9.    11 U.S.C. § 1129(A)(4) ...................................................................................... 12
10.    11 U.S.C. § 1129(A)(7) .................................................................................... 13
11.    11 U.S.C. § 1129(A)(9) .................................................................................... 15
12.    11 U.S.C. § 1129(A)(11) .................................................................................. 15
13.    11 U.S.C. § 1129(A)(16) .................................................................................. 16
14.    11 U.S.C. §1191(B) IS INAPPLICABLE ............................................................. 16
15.    11 U.S.C. § 1129(D) ........................................................................................ 18

IV.    CONCLUSION.......................................................................................................... 18

1

2

## Table of Authorities

3

Cases

Andrew v. Coopersmith (*In re* Downtown Inv. Club III), 89 B.R. 59, 65 (9th Cir. B.A.P. 1988).............................................................................................................................. 10
Idaho Dep't of Lands v. Arnold (*In re* Arnold), 806 F.2d 937, 940 (9th Cir. 1986) .......... 16
*In re* Butler, 42 B.R. 777, 782 (Bankr. E.D. Ark. 1984)...................................................... 10
*In re* Crowthers McCall Pattern, Inc., 120 B.R. 279, 297 (Bankr. S.D.N.Y. 1990)........... 13
*In re* Hoff, 54 B.R. 746, 750-51 (Bankr. D.N.D. 1985)...................................................... 10
*In re* Mason & Dixon Lines, Inc., 63 B.R. at 176, 183 (Bankr. M.D.N.C. 1986)............... 13
*In re* Texaco, Inc., 84 B.R. 893, 906-07 (Bankr. S.D.N.Y 1988)....................................... 10
*In re* Victory Constr. Co., Inc., 42 B.R. 145, 151 (Bankr. C.D. Cal. 1984)....................... 13
Jasik v. Conrad (*In re* Jasik), 727 F.2d 1379, 1383 (5th Cir. 1984)................................. 11
New York Life Ins. Co. v. Chase Manhattan Bank, N.A. (*In re* Texaco Inc.), 85 B.R. 934, 939 (Bankr. S.D. N.Y. 1988) .......................................................................................... 12
Ryan v. Louis (*In re* Corey), 892 F.2d 829, 835 (9th Cir. 1989) ...................................... 11
Stolrow v. Stolrow's, Inc. (*In re* Stolrow's Inc.), 84 B.R. 167, 172 (B.A.P. 9th Cir. 1988) 11
Travelers Ins. Co. v. Pikes Peak Water Co. (*In re* Pikes Peak Water Co.), 779 F.2d 1456, 1460 (10th Cir. 1985) ..................................................................................................... 13

Statutes

11 U.S.C. § 1129................................................................................................. 2, 19
11 U.S.C. § 1129(a)(2) ............................................................................................. 10
11 U.S.C. § 1129(a)(3) ............................................................................................. 10
11 U.S.C. § 1129(a)(7) ........................................................................................ 13, 15
11 U.S.C. § 1129(a)(8) ............................................................................................. 16

Other Authorities

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 412 (1977); S. Rep. No. 95-989, 95th Cong. 2d Sess. 126 (1978) ....................................................................................................... 10

Rules

F.R.B.P. 3020(b)(2) .................................................................................................. 10

Treatises

7 COLLIER ON BANKRUPTCY, 1129.03[2] (15th ed. rev.) ..................................................... 10
COLLIER ON BANKRUPTCY, 1129.03[4] (15th ed. rev.) ....................................................... 12

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TO THE HONORABLE MARTIN BARASH, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; AND ANY PARTIES IN INTEREST:**

Kast Media, Inc. (the "**Debtor**"), debtor and debtor-in-possession in the above-captioned chapter 11 bankruptcy case, hereby respectfully submits this reply in support of its Plan of Reorganization for Subchapter V Debtor (the "**Plan**") [Docket No. 71] and in response to the Objections ("**Objection**") [Docket No. 165] filed by filed by Arcadian Vanguard, LLC ("**Arcadian**") as follows

## I.    INTRODUCTION

Kast's chapter 11 SubV plan has been overwhelmingly accepted by the Debtor's creditors.  Nevertheless, Arcadian, a disputed[1], nonpriority, unsecured creditor claiming approximately $250k in unsecured debt, has engaged in costly, scorched earth tactics, including at least 3 depositions (including deposing Debtor's CEO, Colin Thomson, for over 7 hours), exhaustive discovery and extensive litigation in an effort to undermine what remains a consensual plan.

As shown below, all of Arcadian's assertions against the plan are completely lacking in merit.  The spurious claim that Mr. Thomson is incapable of managing the Debtor because he didn't memorize the company's accounting records is fatally flawed as it attempts to miscast Mr. Thomson as a bookkeeper.  These accusations are even more objectionable given that Arcadian was not only provided with years of financial records but also was able to depose the debtor's accountants, which yielded no evidence whatsoever of mismanagement.

Arcadian's reliance on a declaration from a former employee regarding Mr. Thomson's capability to lead the Debtor post reorganization is likewise flawed and inadmissible.  The Declaration of Dustin Knouse is not only irrelevant (since he left the

---

[1] Debtor has recently learned of facts that call the amount of Arcadian's claim into question, and will be filing its objection in the next few days.

company 3-1/2 years ago) but also violates his confidentiality and non-disparagement contract with the Debtor, and should be stricken.

Arcadian's accusations that Mr. Thomson used the Debtor's funds as his "piggy bank" for personal use are equally meritless. Though inflammatory, these allegations have no basis, as the record is clear that any funds used for personal expenses were taken as 1099 income. Moreover, there is no evidence to support the accusation that Mr. Thomson used Debtor funds to purchase his home.

Arcadian also misunderstands the Debtor's plan and the claims payable thereunder. As just one example, it incorrectly accuses the Debtor of underestimating its legal fees, citing to pre-confirmation fees which were approved by this Court and paid, and have nothing to do with the fee estimates under the Plan. This Court should also reject Arcadian's accusations regarding tax claims payable under the Plan, as the tax claims were filed after the plan and are now being objected to, and Debtor believes each tax claim will either be eliminated or substantially reduced.

Arcadian offers no evidence to support its contention that the Plan fails any of the requirements for confirmation. As an example, though it claims that Mr. Thomson should be charged with overcompensation, it conceals the fact that his compensation was negotiated with Arcadian itself and approved by this court.

Finally, though Arcadian scrolls through the confirmation requirements and claims that the Debtor failed to satisfy them, none of these assertions have any factual foundation or supporting evidence. Accordingly, Debtor respectfully requests that this Court overrule Arcadian's objection so that the Plan can be confirmed with appropriate modifications once the claim objections are resolved.

## II.    BACKGROUND

**A.    <u>Prepetition History</u>**

The Debtor is a dynamic podcast production company which creates award-winning content. Specializing in podcasts with potential for second-window opportunities

in film and television, the Debtor has several projects currently in film & TV development. See attached Declaration of Colin Thomson ("**Thomson Decl.**").

Prior to its bankruptcy filing, the Debtor's operations were dramatically affected by downturns in the advertising industry, decreases in revenue and financial stress caused by structured deals with minimum guarantees due on shows that generated insufficient revenue to cover these amounts.  See Thomson Decl. This financial stress was exacerbated by pre-petition state court litigation. See Thomson Decl.

**B.    Bankruptcy Case**

The Debtor filed a voluntary petition for relief in the United States Bankruptcy Court for the Central District of California (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Bankruptcy Code ("**Bankruptcy Code**" or "**Code**"[2]) on March 13, 2024 (the "**Petition Date**").   The Debtor commenced this subchapter V chapter 11 case in good faith, with the intention to establish a plan of reorganization. Debtor continues to manage its estate as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  To date, no Committee, Examiner or Trustee has been appointed in Debtor's case other than the subchapter V Trustee.

On June 11, 2024, the Debtor filed its Chapter 11 Plan of Reorganization for Subchapter V Debtor ("**Plan**") [Docket No. 71].

Per the Debtor's Confirmation Memorandum and Ballot Summary ("**Confirmation Memo**") [Docket No. 150], and despite Arcadian's voting against the Plan and all of its efforts to thwart the Debtor's reorganization, Class 3 General Unsecured Class claimants voted overwhelmingly in number and amount to accept the Plan[3].

**C.    Tax Claims**

Subsequent to the filing of the Plan, several government entities filed new or amended claims, including the City of Los Angeles ("**City**"), Internal Revenue Service

---

[2] 11 U.S.C. 101 *et seq*.  Unless otherwise noted, all statutory references herein shall refer to the Code.

[3] 84.6% class acceptance in number; 82.2% class acceptance in amount.

("**IRS**"), and Employment Development Department ("**EDD**").  The Debtor has filed

objections to these claims which demonstrate: 1) that the amount owed to the City is not

$179,473.46 as claimed, but rather a priority unsecured claim of just $10,029.35 plus

applicable interest, plus appropriate penalties to be treated as a general unsecured

claim, 2) the amount owed to the IRS is not $212,170.11 as claimed, but rather a priority

unsecured claim of $89,658.87, and 3) nothing is owed to the EDD and the $61,309.64

claimed should be disallowed in its entirety.  See Docket Nos. 171, 173, 185.

Once these claims are determined by the Court, the Debtor intends to amend its

Plan to provide for the appropriate payment terms.  See Thomson Decl.

**D.    Delaware Status**

Due to an oversight, the Debtor was delayed in filing its annual report with the

State of Delaware.  See Thomson Decl.  However, the Debtor has now filed the omitted

report and paid the resulting taxes in the amount of $722.00.  See Thomson Decl.  The

Debtor is currently in good standing with the State of Delaware per the statement

attached as *Exhibit A* to the Thomson Decl.

**E.    Other Claim Objections**

In addition to the tax claim objections on file related to the City, IRS and EDD

claims, the Debtor has also filed objections to the claims of Glaser Weil [Docket No. 175],

Monkey Spunk, Inc. [Docket No. 177], and One Eyed Doc, Inc. [Docket No. 179].

The Debtor is also preparing objections to the claims of Arcadian and X1T, LLC,

which are expected to be on file prior to the confirmation hearing.

Further, the unsecured, nonpriority claim of Bradley Denham et al. ("**Class Action

Claim**") was recently filed on October 10, 2024.  See Proof of Claim No. 23.  The late

claim was filed with the Court's authorization and without objection to timeliness by the

Debtor because, although the Debtor fully disclosed the class action proceeding in its

statement of financial affairs and a Notice of Stay due to the bankruptcy was filed in the

class action on March 20, 2024, the Debtor inadvertently omitted the claim from its

schedules.  See Thomson Decl, and Notice of Stay attached as *Exhibit B* thereto; see

also Statement of Financial Affairs at Docket No. 13.  The Debtor is engaged in settlement negotiations regarding the Class Action Claim and, without divulging any protected settlement discussions, the Debtor expects that any resulting claim will be less than $1 million.  See Thomson Decl.

## III.    DISCUSSION

As detailed in the Confirmation Memo, the Plan is consensual and complies with all of the applicable provisions of Bankruptcy Code §§129(a) and (d). See Docket No. 150.   In its Objection, Arcadian raises several frivolous arguments and engages in extensive unsupported and inflammatory narration, much of which is inaccurate, and none of which demonstrates any valid basis to object to the Plan or deny confirmation. When it finally addresses confirmation standards at page 16, Arcadian's arguments still fail to rebut the Debtor's showing that the Plan complies with all of the applicable provisions.

## A.    Competency of Mr. Thomson

The Objection baselessly contends that Mr. Thomson is not a competent leader based on two grounds 1) the vague declaration of a disgruntled former employee who has not worked with the Debtor since May 2021 (and whose declaration is in direct violation of the settlement and non-disparagement agreement he signed when the Debtor terminated his employment), and 2) the fact that Mr. Thompson sometimes responded with "I don't know," "I don't recall"  and "did not remember," and relied on the Debtor's accountants in response to certain questions during his lengthy deposition by Arcadian.    Ultimately, neither of these contentions offers any reason to question Mr. Thomson's competence.

First, Arcadian's reliance on Dustin Knouse ("**Knouse**") and inclusion of Knouse's declaration as part of the Objection only demonstrates both Arcadian's and Knouse's willingness to engage in extraordinary bad faith.  Contrary to Arcadian's representation at Objection 4:17-18 that Knouse "was employed by the debtor for 6 years from 2017 until 2023," the Confidential Separation And Release Agreement ("**Knouse Agreement**") filed

by Knouse (in direct violation of the confidentiality clause therein) with the Court at Docket No. 144 specifically states that his employment with the Debtor terminated on **May 11, 2021**.  Knouse has no personal knowledge of the Debtor's operations or Mr. Thomson's leadership over the past 3.5 years, and, even if he weren't violating the Knouse Agreement, his opinion based on events occurring over 3-1/2 years ago has no relevance to Mr. Thomson's leadership of Kast today.   Further, as the Debtor's Statement of Financial Affairs demonstrates, the Debtor's gross revenue in 2022, the year after Knouse was terminated, was over $17.5 million, which arguably contradicts any of Knouse's contentions regarding Thomson's competency in developing a highly profitable company.

Second, and more problematically, Knouse is entirely lacking credibility.   The Knouse Agreement specifically states that it is confidential and includes a non-disclosure provision as well as a non-disparagement provision.  Accordingly, Knouse's statements and repeated filings in this bankruptcy case are in direct violation of the Knouse Agreement.  The Debtor intends to take action against Knouse for his repeated violation of the Knouse Agreement, and reserves all rights.  See Thomson Decl.

Third, Arcadian's inane listing of the occasions when Mr. Thomson was unable to recall specific dates or interpret specific accounting entries during his 7+ hour deposition is uncompelling at best. Not only was it reasonable for Mr. Thomson – who is not an accountant or bookkeeper – to be unable to know the answers to specifical accounting questions or specific historic dates off the top of his head, but Arcadian admits that it also deposed the Debtor's accountant, and the Opposition is notably devoid of any indication that it was unable to obtain the specific information from that accounting professional. See Objection 4:8.

Ultimately, Arcadian fails to demonstrate that Mr. Thomson is lacking in competency or that the Plan should not be approved on this basis.

**B.    The Debtor Is Eligible For Chapter 11**

1    Arcadian's opening argument is that the Debtor is not eligible to be in chapter 11

2    because it owes taxes.   Objection 19:6-13.    This is a frivolous assertion given the

3    specific statutory provisions for dealing with paying taxes in chapter 11.  Arcadian's sole

4    authority for is position is the non-binding Texas case In re Two Wheels Properties, LLC.,

5    625 B.R. 869 (Bankr. S.D. Tex. 2020).  Even if it carried any weight in this jurisdiction,

6    which it does not, the Two Wheel's chapter 11 case was dismissed because the debtor

7    there had forfeited its Texas corporate charter, not because it owed taxes. Accordingly,

8    the case is entirely irrelevant here, and Arcadian's argument fails.

9    **C.    The Plan Satisfies The Requirements of 1129(a) and 1191**

10        **1.    11 U.S.C. § 1123(a)(1)**

11    Arcadian asserts that the Plan fails to designate classes of claim as required by

12    11 U.S.C. § 1123(a)(1) because the Plan does not include certain tax claims.  Objection

13    20:15-18. However, as noted above and as is apparent from the record, those claims

14    were not included in the Plan because they were not filed until after the Plan was filed.

15    Further, as noted above, the Debtor has filed detailed objections to the IRS, City and

16    EDD claims, which demonstrate vastly lower obligations than the filed claims.   The

17    Debtor intends to amend the Plan to provide for treatment of any allowed tax claim once

18    the Court has made its final determinations of the amount thereof.

19        **2.    11 U.S.C. § 1123(a)(3)**

20    Arcadian assert the Plan fails to specify the treatment of claims and interests as

21    required by §1123(a)(3) because it fails to account for administrative and priority claims,

22    as well as the Class Action Claim.   However, the Plan does in fact provide for the

23    treatment of the administrative and tax claims that were on file at the time the Plan was

24    filed.

25    Further, the Debtor's objections to the tax claims demonstrate that the amount of

26    taxes due will be substantially less than the claims filed, and the Debtor expects their

27    treatment to be easily incorporated by amendment after the Court's determinations.

28

Lastly, Arcadian's arguments regarding the administrative professional fees is unintelligible. Arcadian does not appear to understand how fee applications work in chapter 11 as it contends that the Plan fails to take into account counsel's recent fee application and the fee application of the Subchapter V trustee. Objection 12:15-19. These fee applications have already been approved and paid and are not administrative plan claims. Moreover, Arcadian fails to note that half of the fees for which approval was requested in Debtor's counsel's recent fee application had already been paid from the pre-petition retainer via professional fee statements. The Plan estimates fees that will be paid in addition to fees approved and paid through the course of the case, and such fees are fully and properly accounted for pursuant to §1123(a)(3).

### 3.    11 U.S.C. § 1123(a)(5)

Arcadian contends that the Plan does not provide adequate means for implementation as required by §1123(a)(5) because 1) the Debtor's monthly operating reports do not support the projections, 2) the projected net disposable income will not pay necessary administrative and priority claims. Objection 21:10-14.

For the reasons detailed above, Arcadian's arguments regarding the administrative and priority tax claims are unavailing. Contrary to Arcadian's representations, the MORs plainly demonstrate that the Debtor's net income for the 6 months this case has been pending is over $45,000. Indeed, the Objection includes a chart which itself reflects this net positive cash flow. See Objection p. 14. As such, it is unclear how Arcadian can acknowledge the Debtor's net positive cash flow and also contend that there is no evidence to support the Debtor's projected cash flow in the Plan.

Ultimately, Plan Article 7 fully describes the means for the Plan's implementation, and there is no evidence to support the notion that the Debtor will be unable to make Plan payments.

### 4.    11 U.S.C. § 1123(a)(6)

Arcadian contention that the Plan fails to satisfy §1123(a)(6) is unintelligible. Section 1123(a)(6) requires that certain language be included in the Debtor's charter if it

is a corporation regarding prohibition of issuance of nonvoting equity securities.  Plan Article 8.07 includes this language and satisfies this requirement.  The Objection does not address Plan Article 8.07 at all.  Instead, Arcadian makes a vague reference to the fact that unsecured creditors may elect to convert their claim to equity and receive shares which are being contributed by Mr. Thomson.  This Plan treatment in no way affects the post-confirmation inclusion of language in the charter regarding issuance of non-voting share.  And the shares being contributed by Mr. Thomson under the Plan are voting shares in any event.  See Thomson Decl.  Accordingly, this argument is pointless.

### 5.    11 U.S.C. § 1123(a)(7)

Arcadian contends that the Plan does not satisfy §1123(a)(7) because it provides for Mr. Thomson to continue in his position with the Debtor. Again, Arcadian's argument is entirely based on its self-serving analysis of Mr. Thomson's deposition testimony and the objectionable Knouse declaration, neither of which demonstrate any actual basis to challenge Mr. Thomson's competency.  The Plan fully satisfies §1123(a)(7).

### 6.    11 U.S.C. § 1123(b)(2)

Section 1123(b)(2) allows a Plan to provide for the assumption or rejection of executory contracts and Plan Article 6 includes such provisions.

Arcadian notes that it has deposed PodcastOne, and that the Debtor and Podcast One are parties to a finder's fee agreement and two revenue sharing agreements. Objection 22:11-14. Without any foundation, Arcadian asserts its belief that the PodcastOne contracts are executory and missing from the Debtor's Schedule G. Objection 22:12. Arcadian further contends that additional evaluation is needed despite Arcadian already having deposed Mr. Thomson for 7+ hour as well as PodcastOne, and having all of the relevant agreements in its possession.  Objection 23:18. Although the Debtor has not determined that the PodcastOne contracts are necessarily executory, it is willing to amend its Schedule G to include the contracts and either provide for their assumption under the Plan or allow them to "ride through" as contracts that were never

1 treated under the plan. Ultimately, Arcadian's argument fails to provide any basis for
2 denying confirmation.

3    **7.    11 U.S.C. § 1129(a)(2)**

4    Section 1129(a)(2) of the Bankruptcy Code provides that a court may confirm a
5 plan only if "[t]he proponent of the plan complies with the applicable provisions of this
6 title." The principal purpose of this subsection is to assure that the plan proponent has
7 complied with the requirements of section 1125 of the Bankruptcy Code in the solicitation
8 of acceptances to the plan. _In re_ Texaco, Inc., 84 B.R. 893, 906-07 (Bankr. S.D.N.Y
9 1988); _In re_ Hoff, 54 B.R. 746, 750-51 (Bankr. D.N.D. 1985); _In re_ Butler, 42 B.R. 777,
10 782 (Bankr. E.D. Ark. 1984); see also, H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 412
11 (1977); S. Rep. No. 95-989, 95th Cong. 2d Sess. 126 (1978); 7 COLLIER ON BANKRUPTCY,
12 1129.03[2] (15th ed. rev.); Andrew v. Coopersmith (_In re_ Downtown Inv. Club III), 89 B.R.
13 59, 65 (9th Cir. B.A.P. 1988).

14    In its Objection, Arcadian's sole argument that the Debtor has not complied with
15 §1129(a)(2) is "between Colin Thompson's use of the debtor to pay his expenses and a
16 rich salary without having to produce results, being completely ignorant of the operations
17 of the debtor (see pages 5-12 above), and ignoring corporate formalities such as filing
18 governmental documents and paying taxes, such an arrangement suggests abuse."
19 Objection 24:2-5. Not only has Arcadian failed to demonstrate any of these allegations
20 are actually true, it also fails to articulate how they demonstrate a lack of compliance with
21 §1129(a)(2). Further, the accusations are entirely baseless as detailed above, and issues
22 such as Mr. Thomson's compensation only serve to demonstrate Arcadian's bad faith, as
23 Mr. Thomson's salary was approved by the Court with Arcadian's specific agreement to
24 the compensation. See Docket No. 54.

25    **8.    11 U.S.C. § 1129(a)(3)**

26    Bankruptcy Code section 1129(a)(3) requires that a plan be proposed "in good
27 faith and not by any means forbidden by law." Bankruptcy Rule 3020(b)(2) provides that

28

1  the Court need not require evidence that a plan has been proposed in good faith if no

2  objection has been filed challenging the proponent's good faith.

3      The good faith standard requires that there be a reasonable likelihood that a plan

4  will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

5  Ryan v. Louis (In re Corey), 892 F.2d 829, 835 (9th Cir. 1989); Stolrow v. Stolrow's, Inc.

6  (In re Stolrow's Inc.), 84 B.R. 167, 172 (B.A.P. 9th Cir. 1988).  The good faith standard

7  requires a showing that the plan was proposed with "honesty and good intentions."  Kane

8  v. Johns-Manville Corp., 843 F.2d 636, 649 (2d Cir. 1988).  A chapter 11 plan is filed in

9  good faith if the plan proponent has exhibited "a fundamental fairness in dealing with

10  one's creditors."  Stolrow's, 84 B.R. at 172. Good faith is viewed under the totality of the

11  circumstances.  Jasik v. Conrad (In re Jasik), 727 F.2d 1379, 1383 (5th Cir. 1984).

12      In its Objection, Arcadian's sole argument that the Debtor has not complied with

13  §1129(a)(3) is "[i]n this case, Colin's lack of practical knowledge of the affairs of the

14  debtor, the pattern of lack of disclosures (agreement, claims, and self-dealing), and the

15  clear pattern and history of not paying taxes and governmental fees and filing required

16  governmental documents, support denial of confirmation and negates any claim of good

17  faith."  Objection 24:24-27.

18      As detailed above, all of these self-serving conclusions fail.  First, Mr. Thomson

19  did not demonstrate any lack of practical knowledge of the Debtor's affairs, but rather an

20  inability to interpret accounting issues or recall specific dates off the top of his head.  The

21  265-page transcript of Mr. Thomson's 7+ hour deposition demonstrates his extensive

22  knowledge of the Debtor's affairs, practical and otherwise, and Arcadian deposed the

23  Debtor's accountant as well, with Debtor's consent.   Second, there is no lack of

24  disclosure as the PodcastOne agreements have been discussed and disclosed

25  throughout the case, are not necessarily executory, and any accusation of self-dealing is

26  unexplained and unfounded. Third, there is no pattern of not paying taxes or fees, as

27  established by the pending objections to the tax claims.

28

1     Ultimately, Arcadian's boundless efforts to thwart the Debtor's reorganization fail

2   to demonstrate anyone's bad faith but its own.  Arcadian is nowhere near the largest

3   creditor in this case, and it is clear that Arcadian has no concern for the impact of its

4   actions on other creditors of the estate.  Further, its self-serving narratives, baseless and

5   inflammatory accusations and reliance on a former disgruntled employee who is violating

6   his contract with the Debtor only further evidence Arcadian's bad faith.

7               **9.    11 U.S.C. § 1129(a)(4)**

8     Section 1129(a)(4) requires full disclosure of all payments or promises of payment

9   for services, costs, and expenses in connection with the case and subjects the

10   reasonableness of such payments to the scrutiny and approval of the court.  COLLIER ON

11   BANKRUPTCY, 1129.03[4] (15th ed. rev.); New York Life Ins. Co. v. Chase Manhattan

12   Bank, N.A. (*In re* Texaco Inc.), 85 B.R. 934, 939 (Bankr. S.D. N.Y. 1988).

13     In this case, the Plan complies with §1129(a)(4) as the Debtor's professionals

14   have been employed with Court approval and all fees paid or to be paid have been and

15   will be subject to Court-approved fee applications through confirmation of this case or as

16   set forth in the approved applications.

17     In its Objection, Arcadian makes the absurd assertion that "the fees of Debtor's

18   counsel are higher than projected, and the fees of the debtor's accountant have been

19   ignored." Objection 25:10-11.

20     Arcadian's statement regarding Debtor's counsel's fees is both unintelligible and

21   incorrect.  Debtor's counsel's fees have been fully disclosed and approved to date.  See

22   Docket No. 160.   Its fees are not higher than any projection, nor can Arcadian point to

23   any evidence supporting that assertion, and the Plan merely estimates fees that may be

24   unpaid as of confirmation.

25     It is also unclear what accountant's fees Arcadian is referencing.  As Arcadian is

26   fully aware since it has obtained the voluminous production it requested from the Debtor

27   and the Debtor's accountant Elyashar & Co, the Debtor's most recent tax return for 2023

28

1  was filed prepetition.  See also Thomson Decl.  Accordingly, there are currently no post-

2  petition fees incurred or due for the Debtor's accountant.

3      Accordingly, Arcadian fails to demonstrate any lack of compliance with

4  §1129(a)(4).

5          **10.    11 U.S.C. § 1129(a)(7)**

6      Bankruptcy Code § 1129(a)(7) provides that a court may confirm a plan only if the

7  plan meets the "best interest of creditors" test.  Under the "best interest of creditors" test,

8  each holder of a claim or interest in an impaired class must either accept the plan or

9  receive or retain property of a value, as of the effective date of the plan, that is not less

10  than the amount such holder would receive or retain if the debtor were liquidated under

11  Chapter 7 of the Bankruptcy Code on such date.  See Travelers Ins. Co. v. Pikes Peak

12  Water Co. (In re Pikes Peak Water Co.), 779 F.2d 1456, 1460 (10th Cir. 1985); In re

13  Crowthers McCall Pattern, Inc., 120 B.R. 279, 297 (Bankr. S.D.N.Y. 1990); In re Mason

14  & Dixon Lines, Inc., 63 B.R. at 176, 183 (Bankr. M.D.N.C. 1986); In re Victory Constr.

15  Co., Inc., 42 B.R. 145, 151 (Bankr. C.D. Cal. 1984).

16      As the Confirmation Memo demonstrates, the Plan satisfies this test because, as

17  demonstrated by the Plan's liquidation analysis, chapter 7 would be more time

18  consuming and costly, and would result in a lower (if any) return to creditors than under

19  the Plan.  As explained by the liquidation analysis attached to the Plan, creditors will fare

20  better under the Plan than in liquidation because creditors  would recover far less from

21  the liquidation of the Debtor's Assets under chapter 7 than under Chapter 11 due to the

22  additional cost of the Trustee and its professionals, the lack of ongoing revenue to fund

23  payments to creditors, and the fact that distributions would necessarily be delayed by

24  virtue of compliance with the chapter 7 process and time delays attendant to approval of

25  a chapter 7 trustee's report and account.

26      Arcadian's Objection contends that the liquidation analysis is "faulty" for two

27  reasons: 1) because it does not include avoidance actions against Mr. Thomson, and 2)

28

because it does not account for uncollected A/R.  Objection 25:26-26:15. These contentions lack any merit.

First, the supposed avoidance actions against Mr. Thomson are based solely on "paragraphs 9, 22, 23, 24, 35, 36, 45 and 50" of the Declaration of Stephen New ("**New Declaration**") that is attached to the Objection.  Evidentiary objections to the New Declaration are being filed separately, but, in sum, New Declaration paragraphs 9, 22, 23, 24, 35, 36, 45 and 50 fail to offer any evidence to support Arcadian's unfounded accusations against the Debtor or Mr. Thomson, particularly in support of any allegedly avoidable transfers.

- The referenced paragraphs offer Mr. New's inaccurate and self-serving summary of Mr. Thomson's deposition testimony, and in some cases such as paragraph 23, are just Mr. New's thoughts without any reference to any testimony.

- New Declaration paragraphs 9, 22, 24 simply refer to Mr. Thomson's testimony that his accountants would separate charges that were business expenses and that any charges which were not business expense would be taken by Mr. Thomson as 1099 income.

- New Declaration paragraph 35 relates to the Debtor's payment of Mr. Thomson's auto payments going back to 2018.

- New Declaration paragraphs 36 and 45 contend that the Debtor financed personal trips for Mr. Thomson to Bali, Hawaii, Fiji and Las Vegas, and Arcadian's apparent belief that these expenses contributed to the bankruptcy filing.  However, the testimony referenced in this paragraph indicates that these trips occurred years prepetition, back in 2022, and confirms that any non-business related travel was taken as income by Mr. Thomson.

- New Declaration paragraph 50 provides Mr. New's baseless opinion that the "Thomsons lived out of Kast Media Inc. like it was their own personal piggy bank" based on a jewelry purchase by the Debtor in New York.  However, the

Exhibit 12 bank statement cited in this paragraph shows this was a single expense of $7,685_ on May 3, 2021 – long before the Debtor's bankruptcy filing.  Moreover, no proof is offered as to who or what the purchase was for.

Second, the AR argument is a red herring.  All AR has been disclosed in the Debtor's schedules and monthly operating reports, and Arcadian does not argue otherwise.  However, as evidenced by the Debtor's schedules and MORs, a significant portion of the Debtor's AR is over 90 days past due and is likely uncollectible.  See Schedules at Docket No. 13, August MOR at Docket No. 155.

Ultimately, Arcadian fails to demonstrate any avoidable transfers even exist and the New Declaration fails to support any such contention.  Further, the Debtor's AR has been fully disclosed and its collectability explained throughout this case.  Neither of these issues has any effect on the Plan's liquidation analysis or refutes the Plan's satisfaction of § 1129(a)(7).

### 11.    11 U.S.C. § 1129(a)(9)

In declaring that the Plan fails to comply with §1129(a)(9), Arcadian repeats its baseless arguments regarding the administrative and priority tax claims in this case.  Not only is there no explanation for how Arcadian came up with its asserted $751,381.99 in administrative and priority claims, but the Plan and the claim objections on file demonstrate that there is nowhere near that amount due to administrative and tax claimants.

### 12.    11 U.S.C. § 1129(a)(11)

Arcadian contends that the Plan is not feasible because the Plan projections fail to demonstrate sufficient cash flow to make all Plan payments.  Although the Objection fails to articulate any further explanation of Arcadian's position, it is likely based on Arcadian's flawed analysis of the administrative and priority tax claims, that have already been addressed in detail above.

Further, as demonstrated by the Plan and Confirmation Memo, the Plan is feasible since it is not likely to be followed by liquidation, or the need for further financial

1  reorganization.  The projections demonstrate that there is sufficient projected income to

2  make the Plan payments. And, while the Debtor will be amending the Plan to provide for

3  the Court's determination of the pending claim objections, the Debtor expects that the

4  additional tax claims will be easily addressed through the term of the Plan.

5  ### 13.    11 U.S.C. § 1129(a)(16)

6  Section 1129(a)(16) provides that all transfers of property under the plan shall be

7  made in accordance with applicable provisions of non-bankruptcy law.  11 U.S.C. §

8  1129(a)(16).  Arcadian does not dispute that this provision is satisfied; rather, it just

9  states that the Plan "fails to address is agreements with PodcastOne."  Objection 28:21.

10  It is unclear what Arcadian is argument on this issue, how the PodcastOne agreements

11  even relate to §1129(a)(16), or why, even if the agreements are in fact executory, they

12  cannot ride through and be effective post-confirmation.

13  ### 14.    11 U.S.C. §1191(b) Is Inapplicable

14  Bankruptcy Code §1191(a) provides that the "court shall confirm a plan under this

15  subchapter only if all of the requirements of section 1129(a), other than paragraph (15) of

16  that section, of this title are met."  11 U.S.C. §1191(a).

17  Only if §1129(a)(8) and 1129(a)(10) are not met, then Bankruptcy Code § 1191(b)

18  provides that, the court may nonetheless confirm the Plan after determining that it does

19  not discriminate unfairly and is fair and equitable with respect to each class of claims or

20  interest.

21  Bankruptcy Code § 1129(a)(8) provides that a Court may confirm a plan if, with

22  respect to each class of claims and interests, such class has accepted the plan or such

23  class is not impaired under the plan.  See Idaho Dep't of Lands v. Arnold (*In re* Arnold),

24  806 F.2d 937, 940 (9th Cir. 1986).

25  Bankruptcy Code section 1129(a)(10) provides that a Court may confirm a plan

26  only if "at least one class of claims that is impaired under the plan has accepted the plan,

27  determined without including any acceptance of the plan by any insider."  See Arnold,

28  806 F.2d at 940 n.2 (at least one class of impaired claimants must accept plan).

1      Here, the only impaired class, Plan Class 3, voted overwhelmingly to accept the

2  Plan. See Confirmation Memo.  Consequently, the Plan complies with the provisions of

3  sections 1129(a)(8) and (a)(10) of the Bankruptcy Code, and the Objection cannot and

4  does not argue otherwise.  Accordingly, the further analysis of §1191(b) regarding unfair

5  discrimination and fair and equitable treatment is not triggered.

6      Nonetheless, the Objection argues under §1191(b) that the Plan is not fair and

7  equitable, unfairly discriminates, and fails to provide remedies if the Plan payments are

8  not made.

9      **1.    The Plan Is Fair and Equitable**

10      Arcadian claims that the plan is not fair and equitable because "debtor has

11  provided no evidence of its ability to make any plan payments other than unsupported

12  projections." Objection 30:12-13.  However, as discussed above, the Plan projections are

13  supported by the MORs to date, and the Plan itself was signed by Mr. Thomson as

14  verification of the information contained therein.  While the Debtor utilized the Official

15  Form 425A which does not include any declaration for the Debtor, the Debtor can easily

16  file an additional declaration substantiating the information in its Plan projections if

17  needed.  Ultimately, the Debtor is providing all of its projected disposable income for a 5-

18  year period under the Plan, and it is therefore fair and equitable according to 11 U.S.C. §

19  1191(c)(2).

20      **2.    The Plan Does Not Unfairly Discriminate**

21      As the Objection specifically notes, a plan is considered to discriminate unfairly if it

22  singles out the holder of a claim for particular treatment. Objection 30:21-24.  However,

23  the Objection fails to identify any creditor that is being singled out for different treatment

24  under the Plan, nor could it, as the members of each class are being treated the same as

25  each other.  Accordingly, Arcadian's claim that the Plan unfairly discriminates entirely

26  lacks merit.

27      **3.    Section 1191(c)(3)(B) Is Satisfied**

28

The Objection asserts that the Plan fails to provide remedies in the event plan payments are not made, thereby violating §1191(c)(3)(B).  Objection 31:12-14. However, this argument conveniently fails to take the entirety of §1191(c)(3) into account, which states:

> (3) (A) The debtor will be able to make all payments under the plan; or (B) (i) there is a reasonable likelihood that the debtor will be able to make all payments under the plan; and (ii) the plan provides appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made.
> 11 U.S.C. § 1191(c)(3).

Here, the Debtor has demonstrated that it will be able to make all payments under the Plan.  Further, the Plan specifically provides for the Bankruptcy Court's jurisdiction to resolve any disputes related to the Plan.  See Plan Article 8.08.   Accordingly, the Debtor submits that the Plan complies with §1191(c)(3), which is not applicable in any event since the Plan is confirmable under §1191(a).

### 15.    11 U.S.C. § 1129(d)

Arcadian's final argument is that the principal purpose of the Plan is to avoid taxes, specifically amounts due to the state of Delaware, City and IRS.  Objection 31:16-21.  Arcadian offers no evidence to substantiate this speculation.  Moreover, as detailed above, IRS's amended claim and the City claim were not included in the Plan because they had not been filed when the Plan was filed.  The Debtor has fully addressed these claims through claim objections, which demonstrates that the allowed claims should only be a small portion of the claims asserted.  With regard to the state of Delaware, the Debtor has filed the inadvertently omitted report and paid the $722 in taxes that were due and fully resolved this issue, and it is now in good standing in Delaware. Accordingly, this argument is meritless and should be disregarded.

### IV.    CONCLUSION.

1    Based on the foregoing, the Debtor respectfully submits that the Plan meets each

2  and every requirement for confirmation pursuant to 11 U.S.C. §§1129, 1181 and 1191,

3  and that the Objection should be overruled in its entirety.

4  RESPECTFULLY SUBMITTED,

5  Dated:  October 15, 2024

6                              LESLIE COHEN LAW PC

7

8                     By      _/s/ Leslie A. Cohen_
                                         Leslie A. Cohen
9                                        Attorneys for Debtor

10

### DECLARATION OF COLIN THOMSON

I, Colin Thomson, hereby declare as follows:

1.    I am over 18 years of age. I am the CEO of Kast Media, Inc., the Debtor and Debtor-in-Possession ("**Debtor**") in the above-captioned bankruptcy case.  Unless otherwise stated, I have personal knowledge or information of the facts set forth herein and, if called as a witness, could and would testify competently thereto.  Where statements are made upon information and belief, I believe them to be true and correct.

2.    I make this Declaration in support of the foregoing reply ("**Reply**").  Where terms are capitalized herein, they shall have the same meaning as defined in the Reply.

3.    The Debtor is a dynamic podcast production company which creates award-winning content. Specializing in podcasts with potential for second-window opportunities in film and television, the Debtor has several projects currently in film & TV development.

4.    Prior to its bankruptcy filing, the Debtor's operations were dramatically affected by downturns in the advertising industry, decreases in revenue and financial stress caused by structured deals with minimum guarantees due on shows that generated insufficient revenue to cover these amounts.  This financial stress was exacerbated by pre-petition state court litigation.

5.    Once the Debtor's claim objections are determined by the Court, the Debtor intends to amend its Plan to provide for the appropriate payment terms.

6.    Due to an oversight, the Debtor was delayed in filing its annual report with the State of Delaware.  However, the Debtor has now filed the omitted report and paid the resulting taxes in the amount of $722.00.  The Debtor is currently in good standing with the State of Delaware.  A true and correct copy of the Debtor's status, as obtained from the Delaware Secretary of State website is attached as *Exhibit A*.

7.    Although the Debtor fully disclosed the class action proceeding in its statement of financial affairs and a Notice of Stay due to the bankruptcy was filed in the class action on March 20, 2024, the Debtor inadvertently omitted the claim from its schedules.  A true and correct copy of the Notice of Stay is attached as *Exhibit B.* The

Debtor is engaged in settlement negotiations regarding the Class Action Claim and, without divulging any protected settlement discussions, the Debtor expects that any resulting claim will be less than $1 million.

8.    The Debtor intends to take action against Knouse for his repeated violation of the Knouse Agreement and reserves all rights.

9.    And the shares being contributed by me under the Plan are voting shares.

10.    Arcadian has obtained voluminous production from the Debtor and the Debtor's accountant Elyashar & Co, including the Debtor's most recent tax return for 2023 which was filed prepetition.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 15th day of October 2024 at St. Louis, Missouri

Colin Thomson

21

# **EXHIBIT A**

## *State Of Delaware*

Entity Details

10/15/2024  11:13:59AM

File Number: 7927176

Incorporation Date / Formation Date:  4/7/2020

Entity Name:  KAST MEDIA, INC.

Entity Kind:  Corporation

Entity Type:  General

Residency:  Domestic

State:  DELAWARE

Status:  Good Standing

Status Date:  10/14/2024

### Registered Agent Information

Name:  TELOS LEGAL CORP.

Address:  13 WEST MAIN STREET P.O. BOX 953

City:  FELTON

Country:

State:  DE

Postal Code:  19943

Phone:  302-483-7293

# **EXHIBIT B**

**CM-180**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Kerry Garvis Wright (SBN # 206320)<br>GLASER WEIL FINK HOWARD JORDAN & SHAPIRO LLP<br>10250 Constellation Boulevard, 19th Floor<br>Los Angeles, California 90067<br><br>TELEPHONE NO.: (310) 553-3000    FAX NO. *(Optional)*: (310) 556-2920<br>E-MAIL ADDRESS *(Optional)*: kgarviswright@glaserweil.com<br>ATTORNEY FOR *(Name)*: Defendants Kast Media, Inc. and Colin Thomson | Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>3/20/2024 10:42 AM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By K. Valenzuela, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 312 North Spring Street
MAILING ADDRESS: 312 North Spring Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Spring Street Courthouse

PLAINTIFF/PETITIONER: JOHN DB DOE et. al.,

DEFENDANT/RESPONDENT: KAST MEDIA, INC. et al.,

| NOTICE OF STAY OF PROCEEDINGS | CASE NUMBER:<br>22STCV24792 |
|---|---|
| | JUDGE Maren Nelson<br>DEPT. 17 |

**To the court and to all parties:**

1. Declarant *(name):* Kerry Garvis Wright

   a. [x] is [ ] the party [x] the attorney for the party   who requested or caused the stay.

   b. [ ] is [ ] the plaintiff or petitioner [ ] the attorney for the plaintiff or petitioner. The party who requested the stay
      has not appeared in this case or is not subject to the jurisdiction of this court.

2. This case is stayed as follows:

   a. [ ] With regard to all parties.

   b. [x] With regard to the following parties *(specify by name and party designation):* Defendant Kast Media, Inc.

3. Reason for the stay:

   a. [x] Automatic stay caused by a filing in another court. *(Attach a copy of the Notice of Commencement of Case, the
      bankruptcy petition, or other document showing that the stay is in effect, and showing the court, case number,
      debtor, and petitioners.)*

   b. [ ] Order of a federal court or of a higher California court. *(Attach a copy of the court order.)*

   c. [ ] Contractual arbitration under Code of Civil Procedure section 1281.4. *(Attach a copy of the order directing
      arbitration.)*

   d. [ ] Arbitration of attorney fees and costs under Business and Professions Code section 6201. *(Attach a copy of the
      client's request for arbitration showing filing and service.)*

   e. [ ] Other:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: March 20, 2024

Kerry Garvis Wright
_____
(TYPE OR PRINT NAME OF DECLARANT)

▶ _____
            (SIGNATURE)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
CM-180 [Rev. January 1, 2007]

**NOTICE OF STAY OF PROCEEDINGS**

Cal. Rules of Court, rule 3.650
www.courts.ca.gov

United States Bankruptcy Court
Central District of California

## Notice of Bankruptcy Case Filing



A bankruptcy case concerning the debtor(s) listed below was filed under
Chapter 11 of the United States Bankruptcy Code, entered on 03/13/2024
at 4:23 PM and filed on 03/13/2024.

**Kast Media Inc.**
7111 Hayvenhurst Ave
Van Nuys, CA 91406
Tax ID / EIN: 47-1650234
*fka* **Kast Media LLC**
*aka* **Sight Reading Academy**
*aka* **Kast**

The case was filed by the debtor's attorney:

**Leslie A Cohen**
Leslie Cohen Law PC
1615-A Montana Ave
Santa Monica, CA 90403
310-394-5900

The case was assigned case number 1:24-bk-10396.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against
the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at
all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take
other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights
in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are available at our
*Internet* home page www.cacb.uscourts.gov or at the Clerk's Office, 21041 Burbank Blvd,, Woodland Hills, CA
91367-6603.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth
important deadlines.

**Kathleen J. Campbell**
**Clerk, U.S. Bankruptcy Court**

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 03/13/2024 16:23:25 | | |
| **PACER Login:** | atty93698 | **Client Code:** | |
| **Description:** | Notice of Filing | **Search Criteria:** | 1:24-bk-10396 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 10250 Constellation Boulevard, 19th Floor, Los Angeles, California 90067.

On March 20, 2024 I served the foregoing document(s) described as **NOTICE OF STAY OF PROCEEDINGS** on the interested parties to this action by delivering a copy thereof in a sealed envelope addressed to each of said interested parties at the following address(es):

SEE ATTACHED LIST

☒ **(CASE ANYWHERE ELECTRONIC TRANSMISSION)** The above-named document has been electronically served on counsel of record by transmission through the Case Anywhere system on the date below. The transmission of this document to Case Anywhere system was reported as complete and a copy of the Case Anywhere Transaction Receipt will be maintained along with the original document and proof of service in our office.

☐ **(BY FACSIMILE)** I caused the above-referenced document to be transmitted to the interested parties via facsimile transmission to the fax number(s) as stated on the attached service list.

☐ **(BY PERSONAL SERVICE)** I caused such envelope to be delivered by hand to the offices of the above named addressee(s).

☒ (State)   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on March 20, 2024 at Los Angeles, California.

_____/s/ Viktoriia Afanasieva_____
Viktoriia Afanasieva

Glaser Weil

# SERVICE LIST

**FALCHETTI LAW FIRM, PC**
Sandra M. Falchetti (SBN 218064)
45 S. Arroyo Parkway
Pasadena, CA 91105
Telephone: (626) 831-9070
Facsimile: (626) 387-0717
Email: sandrafalchetti@falchettilaw.com

**MATERN LAW GROUP, PC**
Matthew J. Matern (SBN 159798)
Joshua D. Boxer (SBN 226712)
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, CA 90266
Telephone: (310) 531-1900
Facsimile: (310) 531-1901
Email: mmatern@maternlawgroup.com
Email: jboxer@maternlawgroup.com

*Attorneys for Plaintiffs BRADLEY DENHAM, RICHELLE MEISS, KAYLON RUSHING, and HARLEY ROMAN, individually, and on behalf of others similarly situated*

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1615-A Montana Avenue, Santa Monica, CA 90403

A true and correct copy of the foregoing document entitled (*specify*): **REPLY IN SUPPORT OF PLAN AND IN RESPONSE TO OBJECTIONS BY ARCADIAN VANGUARD LLC; DECLARATION OF COLIN THOMSON**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 10/15/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Kathleen A Cashman-Kramer     kcashman-kramer@fennemorelaw.com, theresam@psdslaw.com
Russell Clementson     russell.clementson@usdoj.gov
Leslie A Cohen     leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
Asha Dhillon     asha.dhillon@turnerdhillon.com
Moriah Douglas Flahaut (TR)     douglas.flahaut@arentfox.com, C194@ecfcbis.com
Samuel R Maizel     samuel.maizel@dentons.com,
alicia.aguilar@dentons.com;docket.general.lit.LOS@dentons.com;tania.moyron@dentons.com;kathryn.howard@dentons.com;joan.mack@dentons.com;derry.kalve@dentons.com
Matthew J Matern     mmatern@maternlawgroup.com,
lolarra@maternlawgroup.com;ereyes@maternlawgroup.com;rsuh@maternlawgroup.com;jboxer@maternlawgroup.com
Gary B Rudolph     grudolph@fennemorelaw.com,
bkstaff@sullivanhill.com;vidovich@ecf.inforuptcy.com;rudolph@ecf.courtdrive.com;kcashman-kramer@fennemorelaw.com;ejames@fennemorelaw.com;james@ecf.courtdrive.com
United States Trustee (SV)     ustpregion16.wh.ecf@usdoj.gov     ☐     Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) ___10/15/2024___, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached pages

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐     Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 10/15/24 | Clare Hendrics | /s/ Clare Hendricks |
| *Date* | *Printed Name* | *Signature* |